## A. J. ROSE v. J. M. TAYLOR ET AL.

### Decided December 8, 1897.

**1. Homestead Pre-emption—Assignable Interest.**

A settler upon the public domain asserting a right under the pre-emption or homestead laws, acquires an interest therein which, prior to the completion of the three years occupancy required by law, may be sold or affected with an equitable lien in the hands of the purchaser.

**2. Equitable Lien—Exchange of Incumbered Land.**

Defendant, holding title to certain lands charged with a lien to secure his debt to plaintiff, exchanged them with E. for the rights of the latter in a homestead pre-emption claim not occupied for the time necessary to secure patent, and made such claim his homestead. *Held,* that he acquired it subject to an equitable lien in favor of plaintiff to secure the debt charged on the land exchanged for it.

ON MOTION FOR REHEARING.

**3. Same.**

Such lien existed by virtue of defendant exchanging land charged with the trust for other property, and was not dependent upon any loss of the lien on the tract originally incumbered by its transfer to an innocent purchaser.

APPEAL from Bell.   Tried below before Hon. JOHN M. FURMAN.

*Harris & Saunders,* for appellant.—After James M. Taylor transferred the notes received by him from Hair for the purchase money of the 33½ and 15 acre tracts of land in Bell County, and had taken the land back from Hair, he became trustee, holding the legal title for the benefit of Rose, the holder of the purchase money notes, and no change in the form of the trust property could defeat Rose's right, and Rose had the right in equity to follow the trust fund into the land in Archer County after Taylor had received it in exchange for the Bell County property. Story Eq. Jur., 13 ed., sec. 1210; Perry on Trusts, sec. 127; 27 Am. and Eng. Encyc. of Law, 35-39, 47, 60-63; 2 Pom. Eq. Jur., sec. 1044; 101 Ill., 242; 9 Ind., 132; Moffitt v. McDonald, 77 Humph., 457; 96 U. S., 30; Walker v. Brungard, 21 Miss. (13 S. & M.), 723; 74 Maine, 590; Smith v. Perry, 56 Ala., 266; Burks v. Burks, 7 Baxter, 353; Newton v. Porter, 69 N. Y., 133; Bennett v. Austin, 81 N. Y., 308; Cooper v. Lee, 75 Texas, 123.

2.   The fact that the 54 acres of land in Archer County was a pre-emption, the title to which had not been perfected at the time Taylor re-

ceived it in exchange for land in Bell County, does not exempt it from an equitable lien arising in favor of Rose, who held the vendor's lien on the land which Taylor exchanged for said 54 acres; even though the title was incomplete, there was sufficient right in the 54 acres of land in Archer County to support a mortgage. Savoy v. Brewton, 3 Texas Civ. App., 336; Horn v. Shamblin, 57 Texas, 243; Johnson v. Townsend, 77 Texas, 639; Palmer v. Bennett, 81 Texas, 451; Kinsey v. Sasse, 3 Texas Civ. App., 216.

*George W. Tyler,* for appellees.—1. Appellant did not acquire a lien on the 54-acre pre-emption in Archer County, the occupancy of which had not been completed when Taylor moved on it, and the title to which was then in the State, and is not shown to have passed out of the State. Votaw v. Pettigrew, 38 S. W. Rep., 215; Roberts v. Trout, 35 S. W. Rep., 323; Mitchell v. Nix, 1 Posey's U. C., 139; Palmer v. Chandler, 47 Texas, 332.

2. The transaction between Mrs. Edwards and Taylor did not vest in Taylor any right or interest in the 54 acres and was not a sale thereof, and said 54 acres was not and could not be the subject of a sale or mortgage or lien of any kind, legal or equitable, the title thereto being in the State of Texas.

3. Mrs. Edwards was not an innocent purchaser of the land in Bell County, conveyed to her by Taylor. Her agent, J. F. Edwards, had notice of Rose's rights, or at least was informed of facts which legally put her upon inquiry, and she took the land subject to the lien of the Hair notes. Halfin v. Winkleman, 83 Texas, 168; Smith v. Adams, 4 Texas Civ. App., 8; Angel v. Simmons, 26 S. W. Rep., 911; Jackson v. Waldstein, 27 S. W. Rep., 27.

4. Appellant Rose was guilty of laches in not enforcing the lien of the Hair notes on the lands in Bell County, as against Mrs. Edwards, and allowing said notes to become barred by limitation. Bank v. Bruhn, 64 Texas, 574; Douglass v. Mundine, 57 Texas, 347; Murrell v. Scott, 51 Texas, 526; Johnston v. Mills, 25 Texas, 719.

FISHER, Chief Justice.—Rose brought this suit against Taylor to recover the balance due upon a promissory note for $800, executed by Taylor in favor of plaintiff, and also to recover judgment against one Hair on certain notes executed by Hair to Taylor which were delivered to Rose as collateral security, and to foreclose a lien upon 54 acres of land situated in Archer County, Texas.

There was practically no question raised as to the personal liability of the defendants Taylor and Hair, but the contest is upon the question as to the right of plaintiff to foreclose the lien upon the lands situated in Archer County. The defendant Taylor alleged that this land was his homestead and that he was the head of a family, and the land was not subject to the lien asserted by the plaintiff. The court below took this view of the question and held that the land was not subject to plaintiff's

lien; therefore, declined to foreclose it. The ruling of the court in this respect presents practically the only question in the case.

The nature of the lien, together with the facts bearing upon that question, is stated in the findings of the court, which we here set out in full:

"On January 1, 1887, James M. Taylor borrowed $800 from A. J. Rose, with which to make a cash payment on a 160 acres tract of land out of the William Newland survey, in Bell County, Texas, purchased by Taylor from D. C. Freeman. To secure this loan, Taylor gave his note to Rose for $800, due January 1, 1888, with 12 per cent interest from date and 10 per cent attorney's fees, with vendor's lien and deed of trust on the Newland land, subject to the superior vendor's lien in Freeman for the balance of the purchase price of said Newland tract, the amount of which is not shown by the evidence. Taylor also transferred to Rose as collateral security for said note, three notes of J. J. Hair, aggregating $800, which were secured by vendor's lien on 33½ acres of land out of the J. R. Castleman and David A. Thompson surveys and 15 acres out of another survey in Bell County, Texas, which will be hereafter referred to collectively as the '48½ acres.' These notes of J. J. Hair were given in August, 1886, and matured as follows: January 1, 1887, $300; January 1, 1888, $300, and January 1, 1889, $200; and Taylor had executed to Hair a bond for title, but said instrument was never placed upon record in Bell County. Taylor also gave Rose a deed of trust on a flock of sheep then in Taylor's possession in Bell County. On account of the crop failure of 1887, Taylor fell behind in his payments to Freeman, and finally surrendered the Newland land back to Freeman, the evidence being that Taylor's indebtedness to Freeman equaled and perhaps exceeded the value of the Newland land at the time of its surrender to Freeman.

"In the latter part of 1887, J. J. Hair abandoned the 48½ acres purchased from Taylor, and left the State of Texas, but returned to Texas in the early fall of 1889, and has ever since resided in Bell, Williamson, and Cherokee counties, and has ever since been insolvent. Hair did not return to Taylor his bond, nor make a formal reconveyance or surrender of the 48½ acres of land to anyone, but simply abandoned it. Taylor thereupon retook possession of the 48½ acres and occupied it by tenants till about the latter part of the year 1890. Taylor resided in Bell County from January 1, 1887, till February 1, 1891 (the exact date not being shown). Taylor offered to sell Rose the 48½ acres and take up his note held by Rose and for Rose to pay him, Taylor, the difference, the evidence not showing how much difference he asked, but this was declined by Rose. The credit of January 13, 1890, with previous payments thereon, reduced the balance due on Taylor's note to less than $150. Taylor made payments on his note to Rose, as follows: November 6, 1888, $96; June 17, 1889, $99.55; September 7, 1889, $488; and January 13, 1890, $140.45, aggregating $824; and Taylor has made written acknowledgments to Rose of this indebtedness as late as February, 1892, this suit having been filed December 24, 1894. The balance unpaid on said note from Taylor to Rose at this date, January 9, 1897, is $325.03.

"Taylor sold the flock of sheep on which Rose had a deed of trust to McKenzie, took notes from McKenzie in payment, which were turned over to Rose and the credit of $488 above mentioned is given therefor.

"In November, 1890, Taylor, without the consent of Rose, began negotiating an exchange of the 48½ acres of land in Bell County for the pre-emption right of Mrs. Sallie Edwards (a widow) in and to 54 acres of land in Archer County, Texas, which had first been pre-empted by one Keith, who sold his right to Sallie Edwards, and said Keith and Sallie Edwards had occupied the 54 acres of land in Archer County a portion of the time required by the pre-emption laws, but the time of occupancy was not completed when the exchange was made and when Taylor moved on the land; the incompleted term of such occupancy would thereafter have to be completed by actual occupancy of said 54 acres by Taylor. Taylor moved on the 54 acres in Archer County in February, 1891, and has occupied it and claimed it ever since as a homestead, he being, during all of the time of the transactions herein mentioned and still being the head of a family, and said 54 acres of land in Archer County is his homestead. Otherwise, it is not shown that Taylor has complied with the requirements of the pre-emption laws so as to entitle him to a patent, nor is it shown that he has ever obtained a patent to said 54 acres of land. He did, however, get a deed from said Sallie Edwards, conveying same to him, but the deed is not in evidence. In this exchange of lands Mrs. Sallie Edwards was represented by her agent J. F. Edwards, and said agent was informed, before the exchange was consummated, that Taylor had previously contracted to sell the 48½ acres in Bell County, and that the purchaser had gone back on the trade, etc., but no particulars were asked or stated, said agent simply remarking that, if the abstract of title to the 48½ acres showed up all right, he guessed it would make no difference. Such abstract from the Bell County records was subsequently furnished, which showed the title to the 48½ acres in Taylor, and the exchange of deeds was made betwen Taylor and Mrs. Sallie Edwards, the negotiations occurring at Wichita Falls, Texas. Taylor also told this agent all the facts connected with the 48½ acres tract of land and the facts about the Hair notes held by plaintiff; otherwise than as above, Sallie Edwards had no notice of the claim of plaintiff Rose upon the 48½ acres in Bell County, Texas.

"I further find that there was no fraudulent or dishonest intention on the part of Taylor in any of the transactions involved in this litigation, nor is any such intention charged by plaintiff against him."

Conclusions of Law.—"1. I find the notes given by J. J. Hair to Jas. M. Taylor and transferred by Taylor to Rose were barred by limitation before the institution of this suit; and I find in favor of the said Hair on his plea of limitation and for costs.

"2. I find in favor of plaintiff Rose against defendant Taylor for the balance due on the $800 note sued on, and amounting to $325.03, with 12 per cent interest from date of this judgment, and for the additional sum of $32.50 as attorney's fees, and for costs.

"3. On the remaining issue, to wit, Has plaintiff Rose a lien upon the 54 acres of land in Archer County, Texas? I find in favor of defendant Taylor upon the following grounds:

"(a) The facts and circumstances are not sufficient to show an equitable lien in favor of Rose upon the land in Archer County, Texas. I find no authority for the relief invoked by plaintiff.

"(b) The plaintiff Rose, by his laches in not having the lien upon the 48½ acres in Bell County placed upon record or foreclosing the same, thereby lost and forfeited the same by the sale thereof by Taylor to Mrs. Sallie Edwards.

"(c) Taylor did not acquire title to the Archer County land, but simply the 'claim' or inchoate right of Sallie Edwards to become the owner of the land under the pre-emption laws of the State, provided Taylor thereafer should complete the three years occupancy. Then, and not till then, he would be entitled to a patent, by complying with certain other legal requirements. The title to the land was in the State of Texas, and would remain in the State unless and until the occupancy should be completed and other legal requirements should be complied with. The pre-emption and homestead donation laws are based upon a beneficent public policy, to wit: that it is better for homeless families, though insolvent and pursued by creditors with judgments, liens, etc., to be provided with homes and shelters and the means of support, than to be wanderers and tramps, and the only consideration required by the State is actual occupancy for a prescribed period and certain other legal formalities, and the right thus given by the State is personal to the pre-emptor.

"If the plaintiff acquired any lien upon Taylor's land in Archer County, it attached at the moment Taylor acquired his rights from Sallie Edwards. Could anyone have a lien upon the public domain? Certainly not. Again, if such lien had been immediately foreclosed, and Rose or anyone else became the purchaser (who then possessed a home and was not entitled to pre-empt), could such purchaser have completed the occupancy and obtained the patent to the land—would he have acquired any right by such purchase? The answer is certainly, No. Again, if such lien attached at the time Taylor acquired the pre-emption right of Mrs. Edwards it would have to be limited and restricted in a decree of foreclosure *to the right then acquired,* and could not be extended over and applied to the subsequent rights acquired by Taylor by further occupancy or otherwise. In such decree there would have been an apportionment or segregation or partition of his right acquired by Taylor from Mrs. Edwards from the rights subsequently acquired by Taylor by his occupancy, and this would have to be based on evidence of the relative value or in some other way determined, all of which is a legal impossibility and absurdity. I conclude that Taylor acquired no property by the exchange with Mrs. Edwards on which a lien, either expressed or implied, could be engrafted, and that plaintiff has never had a lien upon the 54 acres of land in Archer County conveyed to Taylor by Mrs. Sallie Edwards."

The plaintiff in his petition alleged that Taylor and Hair were .both insolvent, and that Mrs. Sallie Edwards, from whom defendant Taylor acquired the pre-emption or homestead claim in Archer County, acquired the land in Bell County, upon which the plaintiff had a lien, by reason of the transfer of the vendor's lien notes executed by Hair to Taylor, without notice of the rights of plaintiff and of his lien upon that land. Therefore, plaintiff was not in a position to foreclose his lien as against her, upon that tract of land. Taylor, in transferring to Rose as collateral security the vendor's lien notes which were executed by Hair as the purchase price of the 48½ acre survey sold by Taylor to Hair, vested Rose with a lien upon that land, which could not be discharged by reason of Taylor regaining possession of the land and electing to hold the trade between him and Hair abandoned upon the failure of Hair to pay for the land. Taylor, when Hair failed to pay off and discharge the vendor's lien notes due, could repossess himself of the land, and thereby extinguish the rights of Hair as a purchaser, but such effect would not be given to that transaction, as between Taylor and Rose, as to cancel and discharge the lien held by the latter. If Taylor, by the transaction to which Rose was not a party, sold the property on which the latter had a lien to an innocent purchaser, and thereby placed it beyond the power of Rose to foreclose his lien upon the property, the latter in equity could follow the proceeds of the sale in the hands of Taylor, and the lien already existing in his favor would attach to such proceeds and it would be liable for the debt to the same extent as formerly existed against the land.

Now the. pre-emption or homestead claim acquired by Taylor in exchange for the land incumbered in Rose's favor would be subject to the same liability to the lien of Rose as would be the case if other property had been acquired by Taylor as the proceeds of such sale.

The consideration of the purchase price of the land in controversy upon which the lien is sought to be foreclosed being the land given in exchange by Taylor upon which Rose had a lien to secure his debt, the lien of the latter, in equity, immediately attached to the land so acquired by Taylor, upon the making of such exchange. Such being the case, the homestead rights set up by Taylor were subject to this lien and were subordinate thereto. This lien, as between Rose and Taylor, was a charge upon the land when the homestead rights were acquired.

What is here said in this connection is upon the theory that some real right existed in Mrs. Edwards under the homestead or pre-emption laws when she transferred her pre-emption or homestead claim in Archer County to Taylor. It is held that a settler asserting a right under the pre-emption or homestead laws may sell his interest therein before the three years time of actual occupancy required by law has expired, and the vendee may continue the possession, and upon the completion of the unexpired term is entitled to patent, and that a vendor's lien for the unpaid purchase money can be enforced upon the land by the original occupant against his vendee. Johnson v. Townsend, 77 Texas, 644; Palmer v. Bennett, 81 Texas, 451.

In the first case, it is said: "It is clear under the Acts of 1873 and 1879, as found in the Revised Statutes, a settler's inchoate right by incomplete occupancy was an assignable right—that it constituted such an interest as would support a sale and a lien thereon, as between the parties, if the assignee continues possession and obtains title. Johnson obtained title by virtue of his own and the possession by previous occupants which had been assigned to him, and for which he gave his notes. We think he obtained from Thomas a valuable interest in the land, which, being kept alive against the State by continued possession on his part until he was entitled to the land, was sufficient as a consideration to support the notes and liens therein expressed."

In the latter case, it is said: "One who has pre-empted land may sell it prior to the completion of the occupancy of three years, and if the possession be kept up by the vendee or vendees the patent issues in the original right, and the land does not become vacant."

These cases were suits to foreclose vendor's liens in favor of the original pre-emptor. If there was such a compliance with the law on the part of Mrs. Edwards or the original settler as would create in her favor a pre-emption or homestead right in the Archer County land, then it is clear, that, under the decision quoted, it was such an interest as was subject to sale or vendor's lien, and when Taylor purchased he acquired this interest and it would inure to his benefit. The steps taken by the original pre-emptor to acquire the land would result to the benefit of the purchasers from him, and the interest thus acquired was a tangible right, which if followed up by subsequent occupancy, would give a perfect title.

If there was, at the time Taylor acquired the Archer County land in exchange for the Bell County land upon which Rose has his lien, such a tangible interest in Mrs. Edwards, although incomplete, which, if followed up by the subsequent acts required by law, would complete and vest the final right in Taylor, we can see no solid reason why the principles decided in the cases cited would not apply to the facts of this case; for if, as there decided, such a right or interest exists in the original settler or pre-emptor that is the subject of sale or lien, which in the first instance the vendee may acquire, and which in the second he may become liable for, we can not see why the tangible interest thus recognized should not be subject to an equitable lien, such as is sought to be foreclosed in this case. If such an interest was acquired by Taylor as the result of the transfer of the land upon which Rose originally had his lien, equity would fasten upon this land a lien equally as effective as that which existed upon the land which was given in exchange for it. In effect, it would be a case in which the lienholder was following the proceeds of the property upon which his lien originally existed.

The claim of Taylor and his right to the homestead right conferred by the Constitution could no more be urged to defeat a lien of this class than would be the case if the lien was express and created by contract between the parties prior to the assertion of the homestead rights, for immediately upon the acquisition of the land by Taylor, the lien of Rose

attached; consequently, whatever homestead right was asserted, was subsequent and subordinate thereto.

This view of the question is upon the theory that there was some right existing in Mrs. Edwards under the homestead and pre-emption laws that could be transmitted at the time that Taylor bought the pre-emption claim. If she was a squatter upon the land, not intending to acquire it under the homestead or pre-emption laws and without any steps being taken by her or her vendor to so acquire the land, a purchaser from her would acquire a mere naked right, only such as could be conveyed by a squatter; and in such a case there would be no tangible interest existing to which a lien could be fastened.

We understand, from the findings of the trial court and from the manner in which the parties treat the case in this court, that Mrs. Edwards did have some interest in the land as a homestead or pre-emption claimant at the time that she sold to Taylor, but there is no express finding to this effect, nor do the facts establish such an existing right. If it had been shown that Mrs. Edwards or her vendor Keith, previous to the sale to Taylor, had, up to that time, taken the steps required by law to acquire the land as a homestead or pre-emption claim, we would have reversed the judgment of the court below and rendered judgment here in favor of the appellant; but, in view of the uncertainty upon this branch of the case, we will reverse the judgment and remand the case for further trial.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

FISHER, CHIEF JUSTICE.—On the motion for rehearing, our attention is called to the fact that the intimation in the original opinion delivered in this case, to the effect that Mrs. Sallie Edwards was an innocent purchaser from the defendant Taylor of the property situated in Bell County upon which Rose originally had his lien, was incorrect. Under the evidence and the findings of the court upon this question, we were possibly mistaken, and for the purpose of disposing of the motion, we can conclude that Mrs. Edwards, when she purchased from Taylor, was not ignorant of the existence of the lien held by Rose against the Bell County land; but this conclusion will not change the result that we formerly reached.

Taylor occupied towards Rose a trust relation, and the Bell County land which was transfered to Mrs. Edwards was a trust fund to secure Taylor's debt to Rose. When Taylor transferred that land he converted the trust estate, and if Rose saw fit to elect to pursue the proceeds that arose from that sale in the hands of Taylor, he could not complain. Where the trustee converts the trust estate, the proceeds that arise therefrom are held by him subject to the trust, and the beneficiary can, if he so desires, elect to pursue the proceeds, so long as they may be identified, notwithstanding a purchaser from the trustee may have had notice

of the trust and the rights of the beneficiary. Especially is this true where the trustee retains the proceeds in his own hands, such as the case here with Taylor. This principle is fully recognized in 2 Perry on Trusts, 3 ed., secs. 828 to 844, inclusive.

We adhere to the former rulings made, and overrule the motion for rehearing.

*Motion overruled.*